JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

ALLISON MARSTON DANNER (CSBN 195046)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7144
    FAX: (415) 436-7234
    Email: allison.danner@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 07-0677 CRB |
|     Plaintiff, ) | |
| ) | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO TAKE A RULE 15 DEPOSITION |
| v. ) | |
| ) | |
| DORIS ANYANWU and ) ANDREW ASHIEGBU, ) | Hrg. Date: June 11, 2008 |
| ) | Time: 2:15 p.m. |
|     Defendants. ) | Court: The Hon. Charles Breyer |

    The United States hereby responds to the defendant Andrew Ashiegbu's motion pursuant to Rule 15 of the Federal Rules of Criminal Procedure for the issuance of an order permitting him to take the deposition of Alice Anyanwu in Nigeria. For the reasons stated below, the United States opposes the defendant's request. His motion should be denied.

### FACTUAL BACKGROUND

    As described in its April 4, 2008 letter to this Court, the government expects that the evidence will demonstrate the following facts at trial. Doris Akuyoma Anyanwu is a Nigerian citizen, born in 1975. Andrew Ihentuge Ashiegbu is Doris's brother-in-law. Andrew Ashiegbu was born in Nigeria but is a naturalized U.S. citizen. The heart of the false statement at issue in

this case is that Doris and Andrew lived together in Tulsa, Oklahoma between 1981 and 1988.

On December 5, 2005, Doris signed an Application for Status as a Temporary Resident Under Section 245A of the Immigration and Nationality Act (Form I-687), which was then filed. (This Act allows long-term U.S. residents who were here illegally during the 1980's to file for permanent resident status.)   On a worksheet accompanying this form, Doris asserted that she had been an alien who had entered the United States as a non immigrant prior to January 1, 1982. The application and worksheet were signed under penalty of perjury on December 5, 2005.

In January, 2006, a Notice of Intent to Deny Application for Status as a Temporary Resident was sent to Doris that informed her that she had thirty days to provide further evidence that she was continuously in the United States after 1982. As supporting documentation for this application, Doris submitted several declarations and affidavits. One of the supporting affidavits was a written statement made under penalty of perjury by Andrew Ashiegbu.

In Andrew's declaration, signed on February 6, 2006, he stated he that had met Doris on August 16, 1981 on a flight from Nigeria to Tulsa, Oklahoma. He stated he was coming to study at Oral Roberts University on a student visa and that Doris and her mother (Alice Anyanwu) were coming with a group of missionaries to attend a crusade held at Oral Roberts University. Andrew stated he also attended the prayer crusade. According to the affidavit, Andrew moved to an apartment located at 7108 Utica Avenue, Tulsa, Oklahoma. The affidavit further states that Doris and Alice lived with him at that address from November 1981 until 1989.

On or about October 3, 2006, Doris appeared for an interview regarding her legalization application before District Adjudications Officer Eric Yu at 630 Sansome Street, San Francisco, California. This interview was conducted under oath. During the course of that interview, and according to the notes contemporaneously taken by Officer Yu, he reviewed the entire legalization application packet and the previously submitted affidavits and declarations with Doris. Doris confirmed the information contained in these affidavits, including that Doris came to the United States in 1981 and remained here until 1989. Doris stated during this interview that she and Alice lived with Andrew from 1981 until 1989. In addition, she stated that, three or four

1  years after she and Alice started living with Andrew, his wife Sharon moved in with them.

2  On October 11, 2006, Doris was sent a letter stating the Service's intent to Deny her Application for Temporary Residence, due to her failure to meet the eligibility requirements. She was again given 30 days in which to submit additional evidence or testimony.

On November 13, 2006, Immigration received a letter from Doris referencing her legalization application. In this letter, Doris reiterated that she had resided in the United States between 1981 and 1988. She stated that, since she was living with Andrew, she could not provide such items as utility bills in either her or her mother's names. Doris also made the additional claim that, since she and her mother had entered the United States on a "group visa" that was retained by the group leader, Doris is unable to provide the visa as evidence. (In fact, there is no such thing as a "group visa.")

On December 1, 2006, Citizenship and Immigration Services denied the Application for Temporary Resident based on Doris's failure to establish to the satisfaction of a service officer that she qualified for the status. Doris is currently in the United States without any lawful immigration status.

On April 25, 2001, Morgan Ogbonda Chindah submitted a Petition for Alien Relative (Form I-130) on behalf of Doris Anyanwu, who was then his wife. The packet included a biographical information form signed by Doris Anyanwu. On this form, Doris stated that she resided in Enugu, Nigeria from October 1975 until June 2000. This petition was eventually denied.

On July 23, 2004, "Star Nursing Inc.," of Santa Clara, California, filed an Immigrant Petition for Alien Worker with Citizenship and Immigration Services (I-140) on behalf of Doris Anyanwu. The I-140 states that "Mrs. Doris Anyanwu entered United States [sic] without inspection in June 2000." The I-140 packet included an Application for Alien Employment Certification, signed by Doris Anyanwu under penalty of perjury. On this form, Doris stated that, from June 1988 until June 1994, she attended the Holy Rosary College, (a High School) in Nigeria. On the Biographic Information Form submitted with this application, Doris indicated

that her date of birth is October 23, 1975 and stated that she had lived in Enugu, Nigeria from October 1975 through June 2000.

On Andrew's application for Naturalization as a US Citizen, signed under penalty of perjury on December 18, 1992, Andrew listed his residence information as follows:

A.  7108 South Utica Ave, #516, Tulsa, Oklahoma- November 17, 1985-November 19, 1987.
B.  1794 Normandy Dr. #2, Miami Beach, Florida-November 24, 1987-June 18, 1988.
C.  1800 Normandy Dr. #4, Miami Beach, Florida-June 18, 1988-September 21, 1990.

In addition to these documents, the United States is prepared to present testimony to show that Andrew Ashiegbu's former wife, who was married to him from 1985 through 1992, and who lived with him in Oklahoma, did not ever live with anyone named Doris or Alice Anyanwu.

## LEGAL STANDARD FOR RULE 15 DEPOSITIONS

While a district court has broad discretion to grant a Rule 15 motion to take depositions, such motions may only be granted where there are "exceptional circumstances." *United States v. Olafson*, 213 F.3d 435, 442 (9th Cir. 2000); *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998); *United States v. Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994); *United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993). Although district courts should consider "the particular circumstances of each case to determine whether the 'exceptional circumstances' requirement has been satisfied," courts generally have held that four factors should be balanced: whether (1) the witness is unavailable; (2) the testimony is material; (3) injustice would result from the absence of the material testimony to be provided; and (4) countervailing factors would make the deposition unfair to the opposing party. *See Kelley*, 36 F.3d at 1125; *Omene*, 143 F.3d at 1170; *United States v. Thomas*, 62 F.3d 1332, 1340–41 (11th Cir. 1995).

## ARGUMENT

**I.  The Defendant has not Established a Substantial Likelihood that the Witnesses will be Unavailable for Trial.**

Andrew Ashiegbu has not established that there is a substantial likelihood that Alice

Anyanwu would be unavailable for trial. Although unavailability for trial is no longer a prerequisite for a deposition pursuant to Rule 15, courts have continued to rely on a witness's unavailability as one of the factors to be considered in determining whether there are "exceptional circumstances" warranting the deposition. *See Kelley*, 36 F.3d at 1125.

In fact, Alice Anyanwu could apply for a B-2 visitor's visa to testify at trial. A B-2 visa is available through the Department of State. According to the website of the Department of State, the wait time for a nonimmigrant visa interview appointment in Lagos, Nigeria is 10 days. *See* Department of State Website, Visa Wait Time (Lagos), available at http://travel.state.gov/visa/temp/wait/tempvisitors_wait_result.php?post=Lagos&x=107&y=14. Generally, speaking visas are good for a number of months or years, and the individual can enter the United States at any point during that time. Once an individual enters the United States, the duration of his stay is governed by an I-94 issued by the Customs and Immigration Service. If the individual wishes to stay longer than the period provided in the I-94, he or she can apply for an extension of that time period by filing a form I-539. *See* Frequently Asked Questions on the Arrival-Departure Record, (I-94 Form), available at http://www.cbp.gov/xp/cgov/travel/id_visa/i-94_instructions/arrival_departure_record.xml.

In fact, Alice Anyanwu has already gotten a B-2 nonimmigrant visa. (Exhibit 1, Declaration of Senior Special Agent Lesley Brown ¶ 3 [hereinafter Brown Declaration]) Alice Anyanwu was issued a three-month visa to visit the United States, and she came to the United States on April 14, 2000. (Brown Declaration ¶ 4.) Although that visa was valid only through October 14, 2000, Alice Anywanwu did not leave the United States until February 6, 2002. (Brown Declaration ¶ 5.) Thus, Alice Anyanwu has already availed herself of this process and is familiar with it. Defendant advances no convincing argument why she could not use it again to secure her presence at defendant's trial.

## II. Taking a Deposition in Nigeria Would Entail Substantial Delay and Expenditure of Resources.

Defendant asserts that there is no Mutual Legal Assistance Treaty in force between the United States and Nigeria. The database of Treaties in Force maintained by the State

Department, however, does indicate that there is a Treaty on Mutual Legal Assistance in Criminal Matters between the United States and Nigeria that entered into force on January 14, 2003. Bilateral Treaties in Force as of November 1, 2007, *available at* http://www.state.gov/documents/organization/83035.pdf. Nevertheless, it is not clear that criminal defendants can avail themselves of this treaty, whose rights and duties flow only to its signatories–namely, Nigeria and the United States. Even were defendant able to take advantage of this treaty, taking depositions in Nigeria may require the assistance of the U.S. Departments of State and/or Justice to obtain approval from Nigeria to take the depositions. In any event, government counsel would need permission from the government of Nigeria to attend such a deposition. Even if Nigeria were to agree to the request, it is likely that arranging the depositions will take weeks, if not months.

Given the time required to obtain clearance from Nigeria to take depositions and given the expense involved with transporting defense counsel, government counsel, and the ICE case agent and in retaining a court reporter and videographer in Nigeria, the government submits that the defendant should first explore the avenue of having Alice Anyanwu travel to the United States on a nonimmigrant visa for trial.

Alternatively, in other cases, defendants have been able to secure letters rogatory to obtain depositions. It is not clear why defendant believes he cannot avail himself of this option. The fact that a deposition may be more convenient is not a valid reason for granting defendant's request. "Rule 15 makes no exception for convenience and efficiency." *United States v. Ye,* 436 F.3d 1117, 1123-24 (9th Cir. 2006).

### III.   DEFENDANT HAS NOT ESTABLISHED THAT ALICE ANYANWU'S TESTIMONY IS MATERIAL.

Defendant states in his motion that Alice Anyanwu's testimony is material, because there will be no other witnesses to testify that Alice and Doris Anyanwu lived with Andrew Ashiegbu in Tulsa, Oklahoma between 1981 and 1988. If, in fact, Doris and Alice Anyanwu did live in Tulsa for seven years, it strains belief to think there is not a single other witness (whether from a

school, doctor's office, dentist office, church, or neighbor) who could not testify that the two were living with Andrew Ashiegbu for seven years. Thus, it is not clear that Alice Anyanwu's testimony would have the materiality that defendant assumes it will have.

## CONCLUSION

Because defendant has not demonstrated that Alice Anyanwu cannot travel to the United States for trial on a nonimmigrant visa, because defendant has not explained why he cannot seek the information he needs through the letters rogatory process, because it is not clear that Alice Anyanwu's testimony is material, and because of the delay inherent in a Rule 15 deposition that would occur in Nigeria, this Court should deny defendant's motion for a Rule 15 deposition.

DATED: May 28, 2008                    Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

/s/ Allison M. Danner
ALLISON M. DANNER
Assistant United States Attorney